THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant, *v.* THE BOARD OF HEALTH OF THE TOWN OF SENECA FALLS, Respondent.

*Board of health — power of, to direct the abatement of a nuisance, without giving notice to the party charged with maintaining it.*

The Board of Health of the Town of Seneca Falls, acting under chapter 270 of the Laws of 1885, as amended by chapter 309 of the Laws 1888, made an order without notice to a railroad company, requiring the latter to make two openings of a hundred feet each, in an embankment extending from the west shore of Cayuga lake, upon which it operated a railroad, so as to permit the free flow of the waters of the lake through them northwardly.

*Held*, that the duties of the board, in respect to inquiring into and determining whether or not a nuisance existed, were of a *quasi* judicial nature, and that the omission to give notice to the railroad company of the action proposed to be taken, was fatal to the regularity of the proceedings.

That the power given to the Board of Health, by subdivision 4 of section 3 of the said act, "to receive and examine into the nature of complaints made by any of the inhabitants concerning nuisances," etc., by necessary implication, required the board to give a reasonable notice to the person who was charged with the maintenance of a nuisance that complaint had been made, or that such fact existed, so that he might be heard, in his own behalf, in refutation of the charge made against him.

In the absence of any prescribed length of notice a reasonable opportunity is implied, and should be afforded to the party charged with maintaining a nuisance, to defend his conduct.

Appeal by the relator, the New York Central and Hudson River Railroad Company, from an order made at a Special Term, held in the city of Rochester on the 30th day of June, 1890, and entered

in the Seneca county clerk's office, July 2, 1890, vacating and setting aside, with ten dollars costs, a previous order of the Special Term, granted March 21, 1890, which latter order directed that a writ of *certiorari* issue, directed to the Board of Health, and the members thereof, of the town of Seneca Falls, in the town of Seneca, to review its action; and, further, that all proceedings on the part of said Board of Health to remove the nuisance complained of in the papers annexed to the petition, upon which such order was made, or in any way to interfere with, change, alter, modify or remove the embankment of the petitioner, be stayed.

The order appealed from vacated the injunction and the writ of *certiorari* granted by the aforesaid order of March 21, 1890.

*Camp & Dunwell,* for the appellant.

*C. A. MacDonald,* for the respondent.

MACOMBER, J.:

The Board of Health of the Town of Seneca Falls, on the 7th day of November, 1889, made an order, without notice to the relator, requiring the latter to make two openings of a hundred feet each in the embankment extending from the west shore of Cayuga lake, upon which it operates a railway, so as to permit the free flow of the waters of the lake through them northward. The board further directed that, in case the relator should fail to comply with said order, the work should be done under the direction of such board and the expense thereof assessed upon the relator's property. The motion at Special Term having been made, alone, upon the papers on which the writ was issued, the affidavit of the relator's assistant-engineer used on the original application, to the effect that such expenses to the railroad company would be $70,000 or $75,000 stands uncontradicted.

The ground upon which such action was taken is stated in the resolutions of the Board of Health to be, that this embankment caused an impediment in the current or natural flow of the waters and made a deposit of sediment and decaying vegetable matter, and the formation of marshes and a thick growth of weeds, grass and flag along the west shore of the lake at that point detrimental to the health of the community.

This embankment had existed, substantially in the condition in which it was at the time the Board of Health took this action, for a period of forty-two years. The relator has maintained embankments from both shores of the neck of this lake, but the same were connected by a bridge over the middle, resting upon stone cribs, between which are openings at intervals for a distance, in the whole, of 1,522 feet, through which the waters of the lake freely flowed towards the north. Shortly prior to the action of the Board of Health the railroad company began the construction of a new bridge, by which the openings between the cribs through this space of 1,522 feet would be lessened in extent and reduced to a distance of 611 feet in the clear. By this improvement, which materially lessened the number of feet through which the waters of the lake flowed northward, the pre-existing cribs, located at intervals through the 1,522 feet, were dispensed with; so that, under the facts disclosed in the papers, the flow of the lake would not be retarded by the change.

It is further claimed on behalf of the relator that, if there is any obstruction to the free passage of the waters, the same is caused by reason of certain structures made by the State in the vicinity of Mud Lock on the Seneca canal, below the relator's bridge, where all the waters of the lake are required to flow through a space of 252 feet.

It is not necessary to go into all the facts claimed to exist, as stated in the petition and affidavits; for, if the conclusion to which we have arrived is correct, the merits of the case are not necessarily before us, but they may be presented to the court in a subsequent step in this or in some other proceeding.

It is established, without dispute, that the action taken by the defendant was without notice to the relator. This omission we deem to be fatal to the regularity of the proceeding and to cause a reversal of the order appealed from. The proceeding is instituted pursuant to chapter 270 of the Laws of 1885, which was amended by chapter 309 of the Laws of 1888, in particulars not material to this appeal. Under subdivision 4 of section 3, the board of health of towns has power "to receive and examine into the nature of complaints made by any of the inhabitants concerning nuisances, or causes of danger or injury to life and health within the limits of its jurisdiction; to enter upon or within any place or premises where nuisances or conditions, dangerous to life and health, are known or

believed to exist, and by appointed members or persons to inspect and examine the same, and all owners, agents and occupants shall permit such sanitary examination ; and said board of health shall furnish said owners, agents and occupants a written statement of results or conclusions of such examinations; and every such board of health shall have power, and it shall be its duty, to order the suppression and removal of nuisances and conditions detrimental to life and health found to exist within the limits of its jurisdiction."

By subdivision 6 of the same section, the board has power to make such order and regulation in special or individual cases, not of general application, as it may see fit, concerning the suppression and removal of nuisances and concerning all other matters in its judgment detrimental to public health. By subdivisions 8 and 9 it has power to employ necessary persons to carry its orders into effect and to impose penalties for the violation thereof. Section 4 makes willful violation of such orders a misdemeanor, and in addition thereto, in case of non-compliance therewith, the board may enter the premises and abate the alleged nuisance and may recover the expense thereof from the persons maintaining such nuisance.

That the writ of *certiorari* may be issued in a case of this character admits of no doubt. Section 2120 of the Code of Civil Procedure preserves the writ as it existed at common law, except where expressly taken away by statute. So far as the board of health could render its determination upon the matters before it, the decision which it made was a final adjudication from which no appeal could be maintained by the relator, and hence the case is not brought within one of the exceptions to the rule. (Id., § 2122; *Stone* v. *Mayor*, etc., 25 Wend., 167.)

The duties of the board in respect to inquiring into and determining whether or not a nuisance existed are *quasi* judicial in their nature, and it is the duty of this court to determine, by means of such writ, whether jurisdiction was obtained by the board of health, and whether the authority conferred upon it has been pursued in the mode required by law in order to authorize it to make the determination. (Code, § 2140, subs. 1, 2, 3.)

Without any notice, the defendant has taken steps which, if legal, will cause a great expense to the relator. While it may be true that a suit in equity to restrain the defendant from proceeding

further with its illegal acts might be maintained, yet that additional remedy of the aggrieved party is no obstacle to the validity and regularity of the writ in this instance. But the appellant's counsel carry their contention too far. It is claimed by them that the act under which the board of health has proceeded is unconstitutional, being in violation of the provisions of the Constitution, that no person shall be deprived of life, liberty or property without due process of law. In this, however, we think they are in error. This act did not undertake to give the entire procedure necessary to charge any person with the offense of maintaining a nuisance. Had it declared that such a proceeding could be maintained without notice to the parties most interested therein, then the question of its constitutionality would have fairly arisen and would have been easily decided. It was similarly attempted to be raised in the case of the *Metropolitan Board of Health* v. *Heister* (37 N. Y., 661). But such folly cannot be ascribed to it. Though no special provision is made in the act for notice to the offending party, yet the power given to the board by subdivision 4 of section 3, "to receive and examine into the nature of complaints made by any of the inhabitants concerning nuisances," etc., requires, by necessary implication, the board to give a reasonable notice to the person against whom the maintenance of the nuisance is alleged, that complaint has been made or that such fact exists, so that he may be heard in his own behalf and, if possible, to refute the charge made against him. No proper inquiry leading to a final order affecting private rights can be made without hearing both sides. The opportunity to be heard before condemnation is the right which every person has under the common law and under our Constitution. So firmly is this fundamental principle embedded in our judicature, that it is not necessary, even in acts in derogation of the common law, to prescribe in words that notice of the hearing to a party proceeded against shall be given. In the absence of any prescribed length of notice, a reasonable opportunity is implied and must be afforded him to defend his conduct. Such notice will vary in length according to the circumstances and exigencies of each particular case.

While it is true that the board of health may, and in certain instances it should, in the discharge of its public duties, make *ex parte* examinations, yet before a final determination is made

which will put the accused person to expense, or which will deprive him of his right to carry on his business, he should be apprised of the substance of the charge, and thus be enabled to defend himself before final judgment. If the material parts of the petition and affidavits upon which the writ of *certiorari* was granted are true (as we must deem them to be for all purposes of this appeal), a wrong has been perpetrated upon the relator, by the proceeding complained of, under which it could not safely rest; for, in the absence of a reversal of the board's determination for its entire illegality, or the permanent restraint by the court against its being carried into effect, the property rights of the relator would be seriously imperiled.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to vacate the writ of *certiorari* denied, with ten dollars costs.

DWIGHT, P. J., and CORLETT, J., concurred.

Order appealed from reversed, with ten dollars costs and disbursements, and the motion to supersede the writ of *certiorari* denied, with ten dollars costs.

NOTE.— The rest of the cases of this term, which are to be reported, with the list of decisions of those cases decided and not reported, will be found in the next volume (59) of Hun.— [REP.