(19 App. Div. 1.)

### ECKHARDT v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.    June 12, 1897.)

1. POWER TO ABATE NUISANCE—EXERCISE.
    The power to abate nuisances must be reasonably exercised, and, though
    the courts exercise great caution in interfering with the exercise of police
    regulations enacted under general powers conferred upon municipal cor-
    porations or subordinate public agents, the power exercised must depend
    upon the nature and extent of the power granted, and it is the duty of the
    court to see that corporate authorities do not transcend the authority dele-
    gated to them.

2. SAME—LIMITATION BY NECESSITY.
    The right to abate a nuisance is limited to the removal of that in which
    the nuisance consists.    It is derived from necessity, and the necessity must
    be present to justify the exercise of the right.

3. SAME—BUFFALO HEALTH COMMISSIONERS—SANITATION.
    Section 237 of the charter of the city of Buffalo, providing that the
    health commissioner shall have power to declare certain places and things
    to be nuisances, and thereupon to abate the same, and that the expense
    of the abatement may be assessed upon the lands upon which the nuisance
    was, does not authorize such commissioner to cause new erections to be
    made and new appliances to be provided, supposed to be more in accord-
    ance with principles of sanitation than those previously in use on the prem-
    ises where the nuisance has been found, and to charge the expense of
    such improvements to the landowner, against his will.

4. SAME—GREAT AND IMMINENT PERIL.
    The existence of Asiatic cholera in the ports of Southern Europe, though
    they have connection with the port of Buffalo, does not constitute the
    presence of great and imminent peril to the public health, within the mean-
    ing of section 236 of the charter of the city of Buffalo, such as to authorize
    the taking of extraordinary measures to protect the public health.

5. SAME—JURISDICTION OF COMMISSIONER.
    The health commissioner of Buffalo, by proceedings under section 237 of
    the charter of the city of Buffalo to erect new appliances on the property
    of a landowner to replace those through which a nuisance has been cre-
    ated, and to assess the expense thereof upon the land, taken without notice
    to the landowner of the contemplated improvements, and an opportunity to

be heard against them, acquires no jurisdiction of the matter, and an assessment imposed may be disputed in the courts.

6. SAME—RECURRENCE OF NUISANCE—PREVENTIVE MEASURES.

Under Section 237 of the Buffalo charter, in a case where the mere abatement of a nuisance would afford but partial or temporary relief, the health commissioner would be justified in resorting to any means reasonable and proper to prevent a recurrence of the nuisance. Per Adams, J., concurring.

Appeal from trial term.

Action by Margaretha Eckhardt against the city of Buffalo. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

This action was brought to set aside an assessment for $303.75 upon plaintiff's land, situate in the city of Buffalo. The assessment was made to pay for the expense incurred in abating an alleged nuisance, consisting of an open vault or privy on the plaintiff's premises. The work was ordered done by the health commissioner, and its cost was certified by him to the common council, and upon that certificate the assessment was made. The plaintiff's lot is 30 feet front and 120 feet in depth. On this lot is a two-story brick building, which extended 80 feet from the front. Back of this building was an open yard, the whole width of the lot, and extending back 30 or 35 feet. At the rear of this open yard was a vacant lot. On the east side of the lot was a high board fence, and on the west side was a board shed, the easterly side of which marked the division between this lot and the one adjoining. The brick building was occupied by two families. The old privy closets were located on the east side of the lot, and about 15 or 20 feet in the rear of the building. They were ordinary open closets, and a witness testified that there were hundreds of such closets then in use in the locality. "It was an ordinary double vault, by which I mean a vault used by two or three families. Probably it was three feet wide, three feet in depth, and may be eight feet in length; a long, narrow box." The vault was connected with a sewer, but it does not appear that there was any sewer connection from the vault to the street. The sewer connection became clogged up, and failed to carry off the material collected there. The vault overflowed, and human excrement ran out upon the ground. The board of health sent several notices to the plaintiff's agents who had charge of the property, requiring plaintiff to put in new closets, but it does not appear whether these notices contained any particular directions or requirements as to the method to be adopted in executing the works necessary for the abatement of the nuisance or to prevent its recurrence. After the board of health had begun the work for which the assessment was made, the plaintiff proceeded to cleanse the vaults by removing their contents, and witnesses testified that the work was thoroughly done. Notwithstanding this, the board continued in the execution of the work. The witness Roe, whose business it was to clean vaults, testified that he cleaned out the vault in a thorough manner, and that there was no more odor or smell left after he had done so than in any other vault after it is cleaned and disinfected. He did not undertake to open the sewer connection. Plaintiff's son testified that after the cleansing of the vault there was no odor coming from it, more than the odor from an ordinary vault; that it would not be noticeable unless you came right into the closet; that, in order to abate any nuisance there was on the premises, it was not necessary to remove this closet and build a new sewer; the only object of that was to carry off any nuisance that might accumulate thereafter; that the vault was connected with the sewer, but he did not suppose that the sewer carried off the excrement collected there. He thus describes the work done by the board of health: "They put a sewer through the yard, and put three closets in the rear, and put a sewer from the street under this brick building. I believe they put one vent through the brick house from the sink. The sewer was put in on the west side of the lot, instead of the east side, and the closet (top part) was removed from the east to the west side, and I think they put in a new vault. They had new boards. They put in one more closet than there was before, so that there were three seats in the closet, as left by them. Water connections were made with these closets. This vault was built prac-

tically over the end of the sewer which they constructed. My father did not consent to their going on with this work. The building has a foundation deep enough for a cellar, but there is no cellar under it, and he wanted them to stop, but they wouldn't do it, because they had orders from the health board. We were making arrangements for plumbers to do the work. We asked a plumber to bid on the plumbing work,—on the closet work. We calculated changing from the old vault to a water-flushed closet. That is the reason we had it cleaned out. I don't know whether we were going to put in a sewer or not." Plaintiff's husband testified: "I saw the sewer was not deep enough for a cellar, and I told him to stop, and I would see my own plumber, dig deep enough, in case I dug a cellar, so it was deep enough for drainage on the opposite side. He said he couldn't stop,—it was too far gone,—and he would· not allow me to get my own plumber there." The determination of the health commissioner that the closets were a nuisance detrimental to health was based upon their condition before the contents of the vaults had been removed and the vaults cleansed, and there was no further or other determination after this had been done; nor was there any notice to the plaintiff that the method adopted for the abatement of the nuisance was inadequate or insufficient in the judgment of the commissioner. It should be observed, however, that, prior to the cleansing of the vaults, considerable work had been done, under the direction of the board, in the making of the sewer and connections, and much. material had been used and labor employed. An examination of the bill of expense discloses, among other charges, items: 114 hours' time of plumbers, $57; 42 days' time of laborers, $84; 45 hours of carpenters, $22.50; 425 feet of lumber, $17; three anti-freezing closets, $45; charges for tile, tile covers, tile-traps, and various other articles. No evidence was given on behalf of the defendant to justify this extraordinary expenditure. The plaintiff's complaint was· dismissed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,. and WARD, JJ.

Philip A. Laing, for appellant.

James L. Quackenbush, for respondent.

GREEN, J.    By section 237 of the city charter—

"The commissioner shall have full power to enforce and carry out all ordinances, rules and regulations for the preservation of the public health, * * * and in case 'any business or practice is dangerous or detrimental to the public health, to prohibit the same, and to declare unwholesome grounds, yards, cellars,. buildings and other places, stagnant or unwholesome waters, filth and unwholesome matter injurious to health, to be nuisances, and upon so declaring, the commissioner shall have power to abate the same in such manner as he may deem. expedient, and the expense may be assessed upon the lands upon or in front of which such nuisances were, or upon the parcels of land benefited by the abatement of the nuisance, as the' common council shall direct." Laws 1891, c. 105.

The question for determination is whether, under the general power to declare certain matters and things to be nuisances, and to abate the same in such manner as the official may deem expedient, the· power may be implied to cause new erections to be made, new appliances, apparatus, and contrivances to be used, and new improvements to be adopted, all in accordance with supposed scientific principles of sanitation, and to charge the expense, however costly it may be, to the landowner, whether he will or no. The question is not whether the health commissioner had power to cause or order privies: to be put into a proper and decent state, if not in that state; but is. whether he has the right or power to force on the landowner the mechanical contrivance of water-closets, with all their requisites and:

accessories, instead of the privies, which, sufficient as privies, if kept in the condition proper for such conveniences, are on his lands for the purposes of his building there. The power to abate nuisances must be reasonably exercised, and, although the power be given to be exercised in any manner the corporate authorities may deem expedient, it is not an unlimited power, and such means only are intended as are reasonably necessary for the public good. 1 Dill. Mun. Corp. 95; Babcock v. City of Buffalo, 56 N. Y. 268, Sheld. 317. Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the powers granted to them, in which case the contemplated action may be prevented, or the injuries caused redressed, by appropriate suit or proceedings. Id. 342. "The courts do, and doubtless should, exercise great caution in interfering with the exercise of police regulations enacted under general powers conferred upon municipal corporations or subordinate public agents. But the public interests are also subserved in protecting citizens against unnecessary, unreasonable, and oppressive regulations, interfering with a reasonable use of their property or their freedom of action." Fire Department of New York City v. Gilmour, 149 N. Y. 453, 44 N. E. 177. Within the power granted, the degree of necessity or propriety of the exercise of the power of abatement rests exclusively with the proper corporate authorities, but in all cases the power exercised, or attempted to be exercised, must depend upon the nature and extent of the power granted; and, whenever the question of the existence or limit of the power is in question, it becomes the plain duty of the court to see that the corporate authorities do not transcend the authority delegated to them. State v. Mott, 61 Md. 297. In Re Jacobs, 98 N. Y. 98, it was held that while the legislature may determine what laws are required to protect and secure the public health, comfort, and safety, it may not, under the guise of police regulations, arbitrarily infringe upon personal or property rights, and its determination as to what is a proper exercise of the power is not final or conclusive, but is subject to the scrutiny of the courts. With more persuasive force it may be said that no sanitary board or officer can be permitted, under the guise of a power to abate nuisances detrimental to health, not only to remove or abate the nuisance in so far as the public health and welfare may be endangered by its existence, but also to proceed in a summary manner and cause new erections to be made, and new appliances, contrivances, and conveniences to be used and adopted, at a large expense to the owner, and far beyond what the exigencies of the particular case may require.

Defendant relies upon the cases of Ex parte Saunders, 11 Q. B. Div. 191; Reg. v. Llewellyn, 13 Q. B. Div. 681; Reg. v. Wheatley, 16 Q. B. Div. 34; St. Luke's Vestry v. Lewis, 1 Best & S. 865; Hargreaves v. Taylor, 3 Best & S. 613. But the statutes under which these decisions were made expressly conferred upon the local authorities the important and extensive powers here claimed to exist by implication from the simple power to abate nuisances. The public health act provided that the local authority should serve on the owner or occupier of the prem-

ises on which the nuisance arises a notice requiring him to abate the
same within a time specified, and to execute such works and do such
things as may be necessary for that purpose.    Upon default in com-
plying with the requisitions of the notice, or if the nuisance, although
abated, is, in the opinion of the local authority, likely to recur on the
same premises, the latter shall complain to a justice, and the justice
shall summon such person to appear before a court of summary juris-
diction.    The court, if satisfied that the alleged nuisance exists, or
that, although abated, it is likely to recur, shall make an order requir-
ing such person to comply with all or any of the requisitions of the
notice, or otherwise to abate the nuisance, within a time specified in
the order, and to do any work necessary for that purpose.    A penalty
was imposed for noncompliance with the order.    Other sections of
the statute (which were not involved in any of these decisions) enabled
the local authority to require particular things to be erected, by order-
ing that a sufficient water-closet, earth-closet or privy should be pro-
vided, "and the appeal against an order under those sections is to the
central board, who have better capabilities of dealing with the pro-
priety of such orders than the magistrates."    Ex parte Whitchurch,
6 Q. B. Div. 545.    It was held, however, that the order of the magis-
trates must specify what works and things the owner should execute
and do for the purpose of not only abating the nuisance, but also to
effectually prevent its recurrence.    Reg. v. Wheatley, 16 Q. B. Div. 34.
In Ex parte Whitchurch, 6 Q. B. Div. 545, a nuisance existed, consist-
ing of a privy and ashpit in such a state as to be a nuisance; and the
local sanitary authority gave notice to the owner to abate the same,
and for that purpose to fill up the ashpit, abandon the privy, and build
a pail closet.    The owner failed to do so, and the justices thereupon
ordered the owner to comply with the requisitions of the notice.    On
a rule for a certiorari to quash the order, it was held that the justices
had no power to order the erection of the pail closet.    Baron Pollock
remarked that the section under which the notice was given—

"Deals with the abatement of nuisances.    No doubt, there are cases where
works are necessary for the abatement of a nuisance,—for instance, to connect
drains with the main sewer, or to get a sufficient water supply; but I can see
no words in the ninety-fourth section to justify the contention that the owner
of the premises can, under it, be required to put up a particular kind of closet."

Or, as the counsel for Whitchurch contended:

"The sections from 90 onward deal with nuisances and their abatement, and
the works which may be directed relate to abatement, and not to the building
of something in lieu of the privy, which is a nuisance.    If, when the nuisance
is abated, there is any deficiency of construction, the local authority must fall
back upon section 36, which relates to the power of the local authority to en-
force provision of privy accommodation for houses by ordering that a sufficient
water-closet, earth-closet, or privy should be provided."

The authority of this decision appears to me materially affected by
the subsequent cases, though a line of distinction is attempted to be
drawn between them.    As was said in 11 Q. B. Div. 191:

"In that case the owner of the premises had a privy of the ordinary kind, and
the order did not direct the execution of such works as might be necessary for
preventing the privy from being a nuisance, but directed the owner to put up
a particular kind of closet.    Whether that case is right or wrong, it does not

appear to me to be any authority to show that this order is bad. Here the order is not for the erection of a particular kind of closet where no closet existed before, but, there being already a closet, the order is for its removal to a place where it will not be a nuisance. It seems to me that this order is clearly within the terms of the act."

In 13 Q. B. Div. 681, Mathew, J., observed that the words of the act require that the notice and order shall specify the works necessary for the abatement of the nuisance complained of.

"It would be very unreasonable if it were not so; otherwise the party complained against might be called upon to do the work over again. It may be that in Ex parte Whitchurch the justices went too far in ordering the owner of the premises. * * * Here, there being an existing privy, which was found to be a nuisance and injurious to health, the sanitary authority, in order to abate it, have directed certain works to be done,—not the construction of a new privy, but the amendment of the existing one, subject to an appeal to the sessions,—and the sessions have adopted the mode suggested by the sanitary authority for the abatement of the nuisance. I cannot doubt that they had jurisdiction to make the order they have made. I adopt the decision in Ex parte Saunders. If that case differs from Ex parte Whitchurch, I differ too."

However this may be, the decision in Ex parte Whitchurch has very pertinent application to a case where, as here, no express statutory power has been conferred upon the local sanitary authorities to direct the execution of such works, and to require such things to be done, as they may deem necessary to abate or remove the nuisance and also to effectually prevent its recurrence. It clearly indicates that, in the absence of any such legislative authority conferred, the acts of the health commissioner in this case were without legal sanction, and constituted a plain usurpation of power. And a reference to the English act and the decisions thereunder is important for various reasons. No such extensive powers as these existed at common law, and it was therefore deemed necessary or expedient to create and confer them by act of parliament. A mere general power to abate nuisances in such manner as the sanitary boards should deem expedient would hardly accomplish the purposes desired, or attain the beneficent objects within the contemplation of the parliament. Nothing should be left to implication, but ample powers of regulation and direction should be conferred in express terms. The assumption or usurpation of power by the local authorities upon grounds of supposed expediency or necessity of the case ought not to be sanctioned, but the power should be expressly conferred. The right of landowners to manage, improve, or alter their property and buildings in such manner as they may deem fit and proper ought not to be interfered with or controlled by local officials, except in pursuance of legislative enactment conferring the power and regulating its exercise. The power should not be left to the local board to be exercised, mayhap in a capricious or arbitrary manner, and be summarily executed or enforced, but should be subject to the control and review of other and superior authorities or magistrates, and the landowner should have ample opportunity to be heard. The conservation of public interests and the people's health and safety must be looked to, but, at the same time private rights of property must be guarded and protected against unwarrantable invasion, and the undue exercise of authority must be restrained within reasonable

46 N.Y.S.—14

and proper bounds.    These purposes were all intended to be accomplished by the public health act, and proper safeguards were provided for the landowner's protection.    The sanitary commissioner has power to do no more than to require the abatement of the nuisance complained of; and, it may be, he may prescribe the particular mode of abating it, if that be the most effectual way of doing it.    But he possesses no absolute power in that regard.    Nor does it follow that he may direct important alterations and permanent improvements upon the premises, at a large expense to the owner, not demanded by the actual necessities of the case.    There are no words in the charter to justify the contention that the owner of the premises may be required, in addition to abating the cause endangering the public health and safety, to make expensive improvements upon his property to suit the fancy of the official.    His duty was, not to order the construction of an entirely new privy, with all its connections and accessories, but simply to see to the amendment of the one existing.    No attempt was made on the trial to show that the existing privy could not have been put in such condition for use as not to be a menace to health.    The fact that a privy may not conform in all its appointments and accessories to the most approved modes of scientific, sanitary plumbing does not of itself condemn it as a nuisance.    The charter speaks only of abatement of nuisances, and the expense authorized relates to the work and labor necessary for the accomplishment of the purpose of removing or suppressing them, and not to the construction of something entirely new in lieu of the thing whose condition creates the nuisance.    The nuisance complained of was the filthy condition of the privy vaults at the time of the determination that they were detrimental to health, but the large expense incurred had no relevancy to the abatement of that nuisance.    It was not an incident to the removal of the cause of the nuisance, but, on the contrary, was for entirely new and independent work for the alteration and improvement of the plaintiff's premises.    For this we find no authority in the charter.    The charter does not deal with the rights of property in such a way as the defendant contends it does, nor can we find any warrant for what the sanitary officer has done and now insists on.    The right to abate is limited to the removal of that in which the nuisance consists.    Necessity may justify so much, but when the necessity passes away the right to go any further ceases.    The public exigency is met and satisfied by the removal of the nuisance.    The right to abate public nuisances is derived, in every instance of its exercise, from the source of necessity, and the necessity must be present to justify the exercise of the right.    When the cause of the nuisance is once abated, the conservation of the public health and safety is accomplished; and, that being so, there is no warrant or justification in proceeding to make new and important improvements upon the premises for the convenience of the tenants.    No great emergency, no pestilence, no real or actual necessity is shown for those constructions. The owner upon whom the notice is served must, at his peril, effectually remove the nuisance, but he is left to select the particular manner of doing it.    The plaintiff had a right to construct the closets and to build the sewer, and to do all other work in connection with

the same, in accordance with her own notions as to location, plan, economy, and as to other particulars.    The only obligation resting upon her was to put her premises in such a sanitary condition that the health of the public should not be jeopardized.    The commissioner may abate the nuisance in any reasonable manner, but, after the nuisance is abated, then his authority ceases.    If a nuisance existed on the east side of the lot, that nuisance was abandoned; and the commissioner went to the other side of the lot, constructed a new sewer, and built new closets, and put in a new flushing system.    It is rather difficult to perceive that this work contributed in any way to the abatement of any nuisance which existed on the premises at the time. The commissioner had no power, in directing the abatement of the nuisance, to order these constructions.    There was no evidence to warrant a determination that the condition of the vaults, after the removal of the contents, etc., was such as to jeopardize the health of the neighborhood, nor does it appear that any such determination was made.    By the public health law (Laws 1893, c. 661, §§ 25, 26), local boards of health are empowered to "suppress and remove," but no express authority is given to order the construction of entirely new works or improvements at a large expense to the owner.

It appears from defendant's answer that these extraordinary proceedings of the health commissioner are attempted to be justified by the alleged fact of the existence of Asiatic cholera in the seaports of Europe, "having connection with the city of Buffalo."    It is averred that the board of health issued a proclamation declaring the city to be "in great and imminent peril by reason of an impending pestilence," and empowering the commissioner to take such means and cause to be done any and all acts as, "in his discretion," may be necessary to prevent the invasion of said cholera.    This proclamation or resolution purports to have been made by virtue of section 236, City Charter, which reads, "In the presence of great and imminent peril to the public health of the city, by reason of impending pestilence," etc.    In pursuance of this proclamation the commissioner proceeded to construct valuable improvements on the plaintiff's property, so as to hinder or prevent the anticipated invasion from the seaports of Europe "having connection with the city."    This resolution is not in evidence, but, even if it were, it would afford no justification to the commissioner for his invasion of the plaintiff's private rights of property. "Imminent" denotes that something is ready to fall or happen on the instant; as in "imminent" danger of one's life.    "Impending" denotes that something hangs suspended over us, and may so remain indefinitely; as the "impending evils of war."    "Threatening" supposes some danger in prospect, but more remote; as "threatening indications for the future."    Webster.    Now, assuming that the Asiatic cholera had touched the ports of Southern Europe, some 3,000 miles away, it is not apparent that the inhabitants of Buffalo could have been in the presence of great and imminent peril.    It would afford no justification for these expensive improvements, and no attempt is made to justify them as a reasonably necessary expense for the abatement of the nuisance complained of.    Because of the arrival of cholera at foreign ports, may a citizen of an inland town be compelled, nolens

volens, to incur a large expense in the improvement of his property,
and far beyond what the exigencies or necessities of the case may re-
quire, in anticipation of such an invasion? Thus, it appears that this
exorbitant expense was not incurred as an incident to the abatement
of a nuisance detrimental to health, under section 237, but was for
new constructions and improvements upon the premises, and away
from the place where the nuisance existed, on account of a great and
imminent peril that had no existence, except as a fantasy. In other
words, this extraordinary expense was induced by extraordinary
exigencies which, however, had not actually arisen, within the true
meaning and intent of section 236. That being the case, how, then,
can it be justly claimed that this large expense for new improvements
was reasonably necessary for the abatement of a nuisance? Section
237 has especial reference to the presence of contagious or pestilential
disease, and the measures the board may take at once to prevent its
extension.

Another and a very serious objection to the validity of this assess-
ment is that no notice appears to have been given to the plaintiff of
these contemplated improvements, nor any opportunity to be heard
against them. Section 237 further provides that no established busi-
ness or private rights to property shall be interfered with until the
offender charged with the nuisance shall have been duly summoned,
by notice of not less than one or more than five days, to appear before
the commissioner to show cause why such declaration or order of pro-
hibition shall not be enforced against the party or premises charged,
nor until the party shall have an opportunity to be heard. We as-
sume that the notices served on the plaintiff declared the privy to be
a nuisance detrimental to health, and directed water-closets to be put
in. Plaintiff having failed to comply with the notices, the commis-
sioner proceeded to enter into a contract for the construction of these
costly improvements, which were not required for the abatement of
the nuisance complained of, but were supposed to be demanded by
the presence of a great and imminent peril,—in Europe. No notice
was given to plaintiff of the intention to make these material and im-
portant alterations in her property. It is true that the charter does
not expressly provide for such a notice, but merely a notice to show
cause why the declaration made that a nuisance exists, detrimental
to health, should not be enforced; still a notice is or may be requisite,
upon fundamental principles of law. See People v. Board of Health,
58 Hun, 595, 12 N. Y. Supp. 561. The statute confers no judicial
power upon the health commissioner, beyond that which is essential to
the performance of their administrative functions for the accomplish-
ment of the end contemplated, to wit, the summary abatement of
nuisances. "The absence of any provision for previous notice and
hearing, the summary execution of the order without means of redress
or relief, by appeal or otherwise, against error and injustice, would
make the proceedings violate the fundamental principles of justice
universally recognized, if they should be held to establish, by an un-
alterable and absolutely conclusive decree," the liability of plaintiff
for this assessment. City of Salem v. Eastern R. Co., 98 Mass. 431,
447, 451. And see, also, Grace v. Board of Health, 135 Mass. 490;

Hall v. Staples, 166 Mass. 399, 44 N. E. 351. The commissioner acquired no jurisdiction of the matter in this particular. It is no objection to say that the power to adjudge in this matter, if given to the official at all, is given unqualifiedly, and without any requirement that there must be notice of the proceeding; for the power to adjudge, necessarily, by implication, carries with it the obligation to give a hearing to the person to be affected by the decision. Hutton v. City of Camden, 39 N. J. Law, 122. Though no notice may be required by the statute, yet the landowner is entitled to contest in a judicial proceeding "the reasonableness of the order made, and the facts upon which it proceeded." Fire Department of New York City v. Gilmour, 149 N. Y. 453, 459, 44 N. E. 177, 179. And it seems that whoever, in abating an alleged nuisance, injures private property or interferes with private rights, whether he be a public officer or private person, save when he acts under the judgment or order of a court having jurisdiction, acts at his peril; and this principle is applicable to boards of health. People v. Board of Health, 140 N. Y. 1, 35 N. E. 320. The charter does not provide that the notice to the owner or occupant shall direct the mode in which the party shall proceed to remove the nuisance. It directs the end to be accomplished, leaving the party to adopt any effectual mode which he may choose. The manifest purpose of the provision is to enable the owner or occupant to remedy the evil in the mode least detrimental to himself, and thus secure himself and his premises from the intrusion of the agents of the board of health. If the party neglect to effectually remove or abate the nuisance, the board is then at liberty to enter upon the private property where it exists, and take such measures as it may see fit for its removal. But "it is manifest that if an irreviewable discretion is thereby lodged in the board, and the citizen is precluded in a suit for the penalty from contesting the reasonableness of an order made, the board is vested with a power of the most arbitrary description, liable to great abuse, —a power which, though in terms vested in the board of commissioners, is sometimes, at least, as the evidence in this case shows, in fact wielded by the subordinate appointees in the name of the department." Fire Department of New York City v. Gilmour, 149 N. Y. 453, 44 N. E. 177. The propriety or legality of the measures taken for "abatement" of the nuisance, and the reasonableness of the expense, must be open to investigation. It may be shown that they were "unreasonable, unnecessary and oppressive." The hasty and indiscreet conduct of the sanitary commissioner is an admonition, not to be disregarded, against listening to any claim that under any circumstances the power of ultimate judgment over the law and facts, with respect to the rights of persons or of property, can be safely confided to other hands than those of the ordinary judicial tribunals. As this case stands before this court, it appears that, without right, the city of Buffalo, through its officers, has entered upon the property of the plaintiff, and, without her assent, altered its condition, at a large expense, and it is sought to charge her land with the obligation of payment. To sanction such proceedings as these would be to place the property rights of the citizens under the uncontrolled will of the sanitary authorities. The importance of sustaining the board of health in all lawful meas-

ures tending to secure and promote the health of the city should make us cautious in declaring any curtailment of their authority, except upon clear grounds. The powers conferred for a so greatly needed and most useful purpose should receive a liberal construction for the advancement of the ends for which they were bestowed. Gregory v. Mayor, etc., 40 N. Y. 273. We cannot, however, on that account, be indifferent when private rights are assailed and fundamental principles are in question.

The examination of this case, and the application of the principles governing us in the disposition of the questions involved therein, lead us irresistibly to the conclusion that the judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.

Judgment reversed, and new trial ordered, with costs to abide the event. All concur, except ADAMS, J., who concurs in result, with opinion.

ADAMS, J. (concurring). The health department of the city of Buffalo is under the control and management of the health commissioner, upon whom section 237 of the city charter confers full power to abate any and all nuisances in such manner as he may deem expedient. Of course, the determination of the health commissioner as to the existence of a nuisance is not final and conclusive upon the owner of the premises upon which the nuisance is alleged to exist; and when he assumed to declare the plaintiff's outhouse a public nuisance, and to deal with it as such, he did so at the peril of being held liable in the event that the same should be ultimately declared by the courts to be in fact not a nuisance. People v. Board of Health, 140 N. Y. 1, 35 N. E. 320; Delaware, L. & W. R. Co. v. City of Buffalo, 4 App. Div. 562, 38 N. Y. Supp. 510. In this case, however, the court has adjudged that the plaintiff's privy was a nuisance at the time it was declared to be such by the defendant's health commissioner, and this conclusion is clearly justified by the facts of the case. The only question, therefore, to be determined upon this appeal, is whether or not the commissioner exceeded the authority conferred upon him by the provision of the charter to which reference has just been made, in employing the means which he did to abate such nuisance. As civilization advances and the population of the country increases, it has been found absolutely necessary to confer upon municipalities police powers, under which persons and property are necessarily subjected to restraints and burdens, to preserve the public health and secure personal safety, which could not be justified or even tolerated for any other purpose. And this is especially true of the larger cities, where the cosmopolitan population, representing, as it usually does, nearly every country upon the face of the globe, is so dense as to materially increase the danger to be apprehended from the spread of contagious diseases. Having in mind the welfare of the general public, the courts have been compelled to recognize and sustain this power whenever it is sought to be exercised in good faith and within reasonable limits; and therefore it is that in a recent case it was held that the mere fact that a law designed to promote and preserve public health "cannot be enforced with-

out causing expense to the citizen who comes within its provisions furnished no constitutional obstacle to such enforcement, even without previous notice to, and a hearing of, the citizen." Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 46, 39 N. E. 833, 837. It may be assumed, upon the established facts in this case, that opportunity was afforded the plaintiff to construct water-closets upon her premises, and connect the same with the municipal water mains and sewer. This being the situation, it needs no argument to demonstrate that the maintaining of an ordinary privy and a privy vault upon private premises in a city of the size of Buffalo was not only a public nuisance, but it was one which certainly ought to have been abated. It is not difficult to imagine a condition of affairs which the mere abatement of a nuisance would afford but partial, or at best only temporary, relief; and in such a case I think that, even within the restricted power conferred by the Buffalo charter, the health officer of that city would be justified in resorting to any means which, in the circumstances of the case, were reasonable and proper to prevent a recurrence of the nuisance, provided the means resorted to would impose no unnecessary burden or restraint upon the owner or occupant of the premises upon which the nuisance existed. In this particular case, however, it does not satisfactorily appear that the commissioner was mindful of the duty thus resting upon him. On the contrary, it is impossible to resist the conclusion that in constructing a new building, and locating the same upon a different part of the plaintiff's premises from that occupied by the one which was destroyed, and in placing therein water-closets of his own selection, at an expense of more than $300, he was guilty of an arbitrary, unreasonable, and unwarranted exercise of the power conferred upon him by the charter, in consequence of which the plaintiff had just cause for complaint. For this reason I am in favor of reversing the judgment appealed from, and granting a new trial.