The court, upon a careful examination of all of the proceedings before it, finds and holds that the reasons given by the respondent for not issuing liquor tax certificates are reasonable, valid, and proper; nor will this court, in the first instance, voluntarily attempt to override the privilege of the voters to pass upon this question in their own manner. I therefore hold, determine, and decide that the county treasurer, the respondent, was justified in refusing to grant said liquor tax certificates to the petitioners, under the concluding paragraph of section 19 of the liquor tax law, under which he must issue them, if at all, and that he clearly stands within the exception referred to, that:

"Unless it shall appear by a certified copy of a statement of the result of an election held on the question of local option, pursuant to section 16 of this act, in and for the town where the applicant proposes to traffic in liquors under the certificate applied for, that such liquor tax certificate can not be lawfully granted, in which case the application shall be refused."

Under this provision, with the latter portion of subdivision 4 of section 16 of the liquor tax law, it seems to me it should be held to be a good, valid, and sufficient reason why the respondent should refuse to issue said certificates. And this court hereby determines that the respondent has given good, valid, and sufficient reasons for refusing to grant the liquor tax certificates applied for by the said several petitioners, since, if there is any doubt about said respondent's right to grant said certificates, the court should not exercise the discretionary power reposed in it to compel him to do so.

The proceedings must therefore be dismissed, and the prayer of the petitioners must be denied, with only one bill of costs to the respondent.

---

### HAAG v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. BOARD OF HEALTH—POWERS—PUBLIC IMPROVEMENTS.

A board of health cannot, in abating a public nuisance, enter on the construction of important permanent improvements at a scale bringing them within the definition of "public works," and assess costs on the abutting owners, without reference to the costs within the limits of their property or the benefits which their property may have received.

2. SAME—NUISANCE.

Where a city charter authorizes the board of public works to abate a nuisance, and provides that, whenever it shall determine that it is necessary for the public health that any sewer should be constructed or repaired, it shall so certify to the common council, and the latter shall cause the same to be done, a board of health, after condemning a brook as a public nuisance, cannot abate it by the building of a drain at the cost of $10,000, whereby a swamp several hundred feet beyond the property of plaintiff is drained, and assess the cost to plaintiff and other abutting owners.

Appeal from judgment on report of referee.

Action by Jacob Haag against the city of Mt. Vernon to set aside special taxes. From a judgment for plaintiff entered on the report of the referee, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Marshall (David H. Hunt, on the brief), for appellant.
George C. Appell, for respondent.

WOODWARD, J.   The appellant fails to call the attention of this court to any authorities which sustain the somewhat remarkable contention that a board of health, in the exercise of its powers in abating a public nuisance, may enter upon the construction of important permanent improvements, upon a scale bringing them within the definition of "public works," and that the cost of these improvements may be assessed upon the property abutting such improvements, without any reference to the cost of such work within the limits of such property, or the benefits which the property may have received.   We are persuaded that we should look in vain for such authorities, for it has never been the policy of this state to invest boards of health with any such powers.   It is not to be doubted that a board of health, in the presence of a public nuisance, may take such action, within reason, as may be necessary to abate the nuisance; but when it goes beyond this, and assumes to erect buildings or to construct drains which are not necessary to the abatement of the nuisance, it is going beyond the legitimate scope of its powers. and it cannot impose the burden upon the individual or his property. Eckhardt v. City of Buffalo, 19 App. Div. 1, 46 N. Y. Supp. 204.   In the case at bar, the plaintiff was the owner of certain real estate in the city of Mt. Vernon bordering upon a piece of swampy land which was drained by a brook known as "Ann Hook Brook" or "Chester Hill Drain."   This brook was originally clean and wholesome, but, with the growth of population in that vicinity, it became polluted with the sewage of surrounding houses, and it is conceded that at the time of the proceedings on the part of the board of health the open brook or drain had become a public nuisance, and it was declared such by the board of health.   Proceeding under the provisions of section 221 of chapter 182 of the Laws of 1892 (charter of the city of Mount Vernon), the board of health, after condemning the brook or drain as a public nuisance, secured from a civil engineer plans for the abatement of the nuisance, and issued its warrant to one of the policemen of the said city, directing him to abate the nuisance according to the plans furnished.   The policeman made a contract with one Daniel Murray to execute the work, and it was commenced, but was subsequently stopped by an order of injunction.   After some delay, during which the state board of health was called into the matter, it was decided that the work should be continued upon plans which had been largely elaborated by the engineer of the state board of health, practically doubling the original contract cost.   Mr. Murray refused to proceed under the contract, and was employed by the day by the policeman to carry out the plans.   The drain, as finally completed, cost something over $10,000; and it appears from the evidence that the nuisance could have been fully abated under the original contract, if, indeed, any obligation rested upon the plaintiff,

the sewage producing the nuisance being admitted to the brook from sewers and drains in the control of the defendant. Upon the completion of this work, which the evidence shows was planned to drain the entire swamp area, several hundred feet beyond the property of the plaintiff, the plaintiff refused to pay the portion of the cost of such drain assessed against his property, and it was included in his taxes. On his refusal to pay such taxes, the property was sold for taxes under the provisions of law, and this action was brought for the purpose of clearing the property from the lien of such taxes, and other necessary relief, resulting in a judgment for the plaintiff.

The drain which was constructed under this arrangement extended through other property, and was made large enough and was constructed upon a plan calculated to make it permanently fitted to carry all of the drainage of the swamp land in the vicinity of the plaintiff's property. It was an improvement in which the community at large was interested, and to attempt to impose upon this plaintiff his proportionate share of the cost of this improvement, based upon the foot frontage of his property along this conduit, leaving absolutely out of the question those whose property was to be benefited by the resulting drainage, is so manifestly unjust that it does not seem necessary to pursue the question as to the power of the board of health to construct the drain, although it must be apparent, upon a reading of the statute under which the city is incorporated, that to the common council was delegated the exclusive power to deal with public improvements of this character, except as they might be incidental to the abatement of a public nuisance. The board of public health is authorized to abate nuisances, and, by the provisions of section 168, "whenever the board of health shall determine that it is necessary for the protection of the public health that any sewer or drain should be constructed, enlarged, or repaired, and shall so certify to the common council, the common council shall immediately cause the same to be done." This provision of the charter is absolutely useless if the board of health may, on its own motion, undertake a public improvement of the character of that involved in the present controversy. Why should the board of health determine the necessity of a sewer or drain, and certify the fact to the common council, if it might, without such circumlocution, accomplish the end by issuing its warrant to a police officer, directing him to have the same constructed?

The attitude of the defendant is based upon an entire misconception of the object sought to be attained through the board of public health. This body is the local custodian of the police powers of the state, in so far as they relate to the public health. It is organized for the purpose of protecting the health of the community, and for this purpose it is given extraordinary powers, but they are all limited by the requirements of the public health, and every step beyond this limitation is an usurpation which the courts cannot sanction. It may abate a nuisance of a public character, and it may exercise every power necessary to this end, and, as an incident of this power, it might make a permanent improvement calculated to prevent a

recurrence of the nuisance, provided the work bears a legitimate and necessary relation to the abatement of the nuisance; but it cannot go out into the domain of public improvements, levying arbitrary assessments upon adjacent properties, making the nuisance the pretext. That is an invasion of the field reserved by the law to the legislative department of the municipality. In the case of Health Department of City of New York v. Rector, etc., of Trinity Church, 145 N. Y. 32, 39 N. E. 833, the court upheld the right of the board of health, under a positive statute, to compel the owner of a tenement house to place water pipes and faucets upon each floor, but in that case the court was particular to point out that:

"If the expense to the individual, under such circumstances, would amount to a very large and unreasonable sum, that fact would be a most material one in deciding whether the method or means adopted for the attainment of the main object were or were not an unreasonable demand upon the individual for the benefit of the public. These exactions must be regarded as legal so long as they bear equally upon all members of the same class, and their cost does not exceed what may be termed one of the conditions upon which individual property is held. It must not be an unreasonable exaction, either with reference to its nature or its cost. Within this reasonable restriction, the power of the state may, by police regulations, so direct the use and enjoyment of the property of the citizen that it shall not prove pernicious to his neighbors or to the public generally."

We are of opinion that the referee, whose intelligent opinion accompanies the case, has correctly disposed of the controversy upon its merits, and the judgment appealed from should be affirmed, with costs. All concur.

---

(27 Misc. Rep. 308.)

PEOPLE ex rel. LEONARD v. HAMILTON.

(Monroe County Court. April, 1899.)

1. INTOXICATING LIQUORS—LOCAL OPTION ELECTION.
Liquor Tax Law 1896, § 16, which regulates local option elections, provides that a certified copy of the result of the vote shall be filed by the officer with whom returns of town meetings are required to be filed by the election law. Section 19 requires issuance of license to an applicant by the county treasurer unless the aforesaid certified statement, showing that the certificate cannot be lawfully granted, has been filed as required in section 16. General Election Law, §§ 83, 84, 111, require the formal return of the canvass of votes to be made and signed by the inspectors of election. 1 Rev. St. c. 11, tits. 2, 3, provide that the justices of the town should preside at town meetings and act as inspectors of election, and give the town clerk no voice in judging as to the result; he only recording the proceedings of the meeting, which are to be signed by the justices presiding. Laws 1830, c. 289, and Town Law, § 39, term the justices "canvassers," where a town holds its meetings in separate election districts. *Held*, that a statement of the vote on the question of local option, signed only by the town clerk, was not such compliance with Liquor Tax Law, § 16, as to warrant the treasurer in refusing to issue a liquor tax certificate.

2. SAME—REVIEW OF ACTION OF OFFICER REFUSING LICENSE—CERTIORARI.
Liquor Tax Law 1896, § 28, provides that if a judge or justice shall, upon a hearing, determine that a liquor tax certificate has been denied by the officer without good reason, he may make an order commanding such officer to grant such application. *Held* that, where the officer has refused to issue the certificate because of a certified statement of a local