**In re SCHEER LIGHTING STUDIOS, Inc.**

**ARNOLD v. GLOBE EXCHANGE BANK.**

**No. 4181.**

District Court, E. D. New York.

May 7, 1930.

Sweet, Lefenfeld & Sweet, of New York City (Irving Sweet and Louis W. Arnold, Jr., both of New York City, of counsel), for plaintiff.

Furst, Schwartz & Schwager, of Brooklyn, N. Y. (Julius Schwartz, of Brooklyn, N. Y., of counsel), for defendant.

GALSTON, District Judge.

There are two causes of action set forth in the complaint. The first action alleges a preference by the Scheer Lighting Studios, Inc., the bankrupt, under sections 60a and 60b of the Bankruptcy Act, 11 USCA § 96 (a) and (b); and the second, under sections 67e and 70e of the Bankruptcy Act, 11 USCA § 107(e) and 110(e), resulting from an alleged violation of section 15 of the Stock Corporation Law of the state of New York.

It is alleged that on March 1, 1929, the Scheer Lighting Studios, Inc., filed a voluntary petition in bankruptcy in this court; that on March 15, 1929, and on March 26, 1929, the Scheer Lighting Studios, Inc., made a transfer of a portion of its property to the defendant in making payments aggregating $4,000; by notice of amendment it was set forth that the preference took place between September 8, 1928, and March 26, 1929.

The plaintiff's case as developed at the trial disclosed that the bankrupt had an account with the defendant bank, and that on or about April 20, 1928, procured a loan of $10,000 from the bank. On August 20, 1928, this loan was renewed for $9,000, and on December 20, 1928, was renewed for $8,500.

It appeared further that, in addition to this main loan, the bank was in the habit of discounting customers' paper for the bankrupt. At or about September 8, 1928, again on October 16, 1928, and also on November 16, 1928, the bank discounted customers' notes in the respective amounts of $2,000, $1,000, and $1,000, but the bankrupt in none of these cases obtained the control of the proceeds or discounts, for at the bank's insistence the sums were credited, not to the general account of the bankrupt, but were deposited in a separate collateral security account. The bank's officer Davis explained these transactions by stating that they were necessary in order that the bankrupt should maintain balances in the ratio of one to five of the amount of its borrowings from the bank. On September 8th, the aggregate loans from the bank to the bankrupt, made up of discounts of bankrupt's notes and customers' paper, was $19,000; on November 26th, the aggregate loans were $24,000. At the time of the bankruptcy, the Scheer Lighting Studios, Inc., was indebted to the defendant on its own paper in the sum of $8,500, $800 on overdrafts, in addition to the indebtedness on some of the unpaid paper of customers. After the bankruptcy, the bank applied the $4,000 held in the collateral deposit account against the existing indebtedness of the bankrupt. It is this sum which the trustee in bankruptcy now seeks to recover.

To succeed under the first cause of action, the plaintiff must meet the conditions of proof set forth under sections 60a and 60b of the Bankruptcy Act, U. S. Code, tit. 11, § 96(a) and (b), 11 USCA § 96(a) and (b). The relevant provisions are as follows:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition * * * and before the adjudication, * * * made a transfer of any of his property, and the effect of the * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *

"(b) If a bankrupt * * * at the time of the transfer * * * and being within four months before the filing of the petition

in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, * * * shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

It will be recollected that a voluntary petition in bankruptcy was filed on March 1, 1929. In consequence, assuming that the transactions of September 8, 1928, and October 16, 1928, constituted a preferential transfer within the meaning of the Bankruptcy Act, since such transactions occurred more than four months before the filing of such voluntary petition, it must follow that they are not subject to the provisions of the act.

The transaction of November 16, 1928, was, however, within the four months' period. Is it a voidable transfer?

The plaintiff must prove that the Scheer Lighting Studios, Inc., was insolvent at that time. The proof on the question of insolvency is most unsatisfactory. An accountant testified that he examined the books and records of the bankrupt company; that he took the inventories, as stated on the books of account, as of December 31, 1928, accepted those as correct, and, with those figures as a basis, arrived at the percentage of gross profit for the year 1928; and, aided by a most casual inventory of two other witnesses, made in February, 1929, he estimated that the inventory of September, October, and November, 1928, was not in excess of $10,000. Using that figure, he calculated the total assets as of November 30, 1928, to be $38,039.68, as against liabilities of $50,231.68. That method of proving insolvency is certainly not convincing.

In consequence of the foregoing analysis, I find a failure of proof of insolvency on November 16, 1928, and accordingly dismiss the first cause of action.

The second cause of action is based on the provisions of the New York Stock Corporation Law, § 15. That act in 1928 set forth that:

"No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except that laborers' wages for services shall be preferred claims and be entitled to payment before any other creditors out of the corporation assets in excess of valid prior liens or incumbrances. * * *

"Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * *

"Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

It may be noted that, under the Stock Corporation Law, the prohibited transfers are not limited to those made within four months of bankruptcy. It is provided merely that no such transfer shall be valid if the corporation at the time of the transfer is insolvent or its insolvency is imminent and if it be made "with the intent of giving a preference to any particular creditor." As to the transfers made on September 8, 1928, October 16, 1928, and November 16, 1928, as I heretofore have said, I find no convincing evidence of a state of insolvency. There remains, therefore, for consideration whether at any of such times insolvency was imminent.

I find no definition in an adjudicated case of the term "imminent" as used in the section quoted. 4 Words and Phrases, First Series, 3410, defines the term as follows:

"The word 'imminent' conveys usually some idea of 'immediate'—of something to happen upon the instant. But conceding this to be so in a general sense, yet it does not mean an instant consummation. The Queen of the Pacific [C. C.] 25 F. 610, 612.

"'Imminent' denotes something that is ready to fall or happen on the instant, as imminent danger of one's life. * * * Eckhardt v. City of Buffalo, 19 App. Div. 1, 46 N. Y. S. 204, 211."

Giving the word, therefore, its usual and normal connotation, it is fair to say that it means in the section in question an insolvency which by virtue of the facts is likely to occur at any moment. Such a condition did not exist in respect to the bankrupt herein on September 8, 1928, because it continued business for months thereafter. The same is true

958

of its condition on October 16, 1928, and on November 16, 1928.

Whether the bankrupt consented to the setting up of a special collateral deposit account "with the intent of giving a preference" to the bank may well be doubted. On the contrary, it would seem to be a fair presumption that since, as a matter of customary banking practice, the bank insisted on having a ratio of deposits to loans of one to five, it was necessary for the Scheer Lighting Studios, Inc., to meet this requirement in order to carry on with its operations. This does not mean an intent to prefer a creditor. See Howland v. Metropolitan Bank (D. C.) 228 F. 542; Baker v. Emerson, 4 App. Div. 348, 38 N. Y. S. 576; Grandison v. Robertson (C. C. A.) 231 F. 785.

Accordingly, the complaint is dismissed. Settle decree on notice.