Joseph H. Bolton, Claimant, *v.* The State of New York, Defendant.

(Claim No. 24067.)

Court of Claims, April 29, 1938.

*Roy C. McHenry,* for the claimant.

*John J. Bennett, Jr., Attorney-General [James H. Glavin, Jr., Assistant Attorney-General,* of counsel], for the defendant.

Barrett, P. J.   Claimant, on and prior to July 7, 1935, was the owner of land facing a State highway in the town of Barker, Broome county, N. Y., on which he had erected a house about fifty-four feet in length and about twenty-two feet wide, resting on iron columns set in the ground and wooden posts.   It was located about one hundred feet from the Tioughnioga river.   On July 7, 1935, as a result of a very heavy rainstorm, described as a cloudburst, the river overflowed its banks and adjoining lands and carried the house along southerly on the highway, finally depositing it at a point about two-tenths of a mile from its original location and at an angle across the highway.   At this point on the east side of the house was an embankment and on the other side a declivity protected by posts and the house as it stood in the highway extended from the bank to the posts thus completely blocking all vehicular traffic.   On the following day, claimant was informed by public authorities that the house must be removed, and he said in substance, as he

claims, that he had no objection to its removal if it were taken down in sections, or as the State claims, if the work was done carefully. On that day, some fifteen or eighteen automobiles and trucks were unable, by reason of the position of the house, to get through on the highway, and on the following day, July ninth, the house was demolished. While those who did the work of demolition were not sworn as witnesses, it appears from the testimony that they were State employees. As originally filed the claim stated: " The employees of the Highway Department demolished the house instead of removing it, in order to clear the highway." The State moved to dismiss upon the ground that the claim was insufficient on its face in that no negligence was specifically alleged. It would seem that the allegation was sufficient, but in any event, during the trial, claimant moved to amend the claim and said motion was granted, adding thereto this allegation: " the employees of the Highway Department wilfully and wrongfully demolished the house instead of removing it, in order to clear the highway."

The duty of maintaining this highway rested on the Superintendent of Public Works. (Highway Law, § 12.) The house constituted an obstruction which, for the proper maintenance of the highway, had to be removed and the Superintendent of Public Works had the power to summarily remove it. (29 C. J. p. 625, § 380, and cases cited; *Cook* v. *Harris*, 61 N. Y. 448.) This power is ordinarily confined to doing only what the necessities of the case justify (*Lawton* v. *Steele*, 119 N. Y. 226, 238), but much is left to the discretion of the authorities. (*Eckhardt* v. *City of Buffalo*, 19 App. Div. 1.) The question then is whether the action of the employees was necessary and proper under the circumstances. The claimant contends that a roadway or detour could have been constructed into the bank on the east side of the highway for the passage of vehicles or that the house could have been moved back on the highway, over 1,000 feet and placed on the side of the road on claimant's land or that it could have been cut in sections, thus permitting it to be reassembled. Claimant, a builder, said, in substance, that such a roadway or detour could have been constructed in one-half day by four men and that the excavation would amount to about forty cubic yards, resulting in a passageway about eight feet wide and the length of the house. He also said that this construction would necessitate the removal of twelve or fifteen trees, which he described as scrubs. On the other hand, the State's testimony is that it would require from 300 to 350 cubic yards of excavation and twenty men between three and four days to do this work. The top of the slope of this detour, constructed in wet land in a section where other slides had occurred, would be

about fifteen feet high without shoring and with the possibility of encroaching on private lands. The proof does not disclose the feasibility of such procedure. As to the removal of the house and its transfer to a location at the side of the highway near claimant's land, no equipment was available upon the part of the claimant or the State, and at the time the work was done it was not possible for either party to know when such equipment would be available. The circumstances were such as to require immediate action and the failure to wait for such equipment and then attempt to roll the house back did not create liability. As to breaking the house into sections there is no proof that equipment was at hand for such purpose or that it could be done without such injury to the building as to render it valueless. There is no intimation of any fault upon the part of the State resulting in the flood and the consequent carrying away of the house. The authorities were bound to clear this highway, not alone for the passage of traffic, but to prevent possible injury to those using the highway and to protect the State from damages caused thereby. An emergency existed of which claimant was aware and the proof does not justify the conclusion that the authorities went beyond what the necessities of the occasion required.

The claim must be dismissed.

RYAN, J., concurs.