In the Matter of the Application of the LITHUANIAN WORKERS' LITERATURE SOCIETY, Appellant, for an Amended Certificate of Incorporation.

CHARLES D. NEWTON, Attorney-General of the State of New York, Respondent.

Second Department, March 31, 1921.

**Corporations — membership corporations — application to amend charter so as to include persons not opposed to " Marxian principles " denied — Marxian principles as within prohibition of Penal Law, sections 160, 161.**

An application of the Lithuanian Workers' Literature Society to amend their charter, so as to admit to membership persons not opposed to the " Marxian principles approved by the majority of the members," is properly denied, where it appears that there is dissension among the Lithuanians as to whether such principles advocate the overthrow of the government by violence, rather than by constitutional or parliamentarian

procedure, and it further appears that Karl Marx, at times, gave his sanction and approval to the attempts to overthrow governments by violence, and by methods which are condemned by sections 160 and 161 of the Penal Law.

The Socialistic principles propounded by Karl Marx are broad enough to justify, even in this country, the propaganda, which our Penal Law condemns as criminal and even felonious.

APPEAL by the petitioner, Lithuanian Workers' Literature Society, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 28th day of September, 1920, denying its motion to amend its certificate of incorporation as to the qualifications of membership therein.

*Charles Recht* [*Rose Weiss* with him on the brief], for the appellant.

*Charles P. Robinson, Deputy Attorney-General* [*Charles D. Newton, Attorney-General,* with him on the brief], for the respondent.

MILLS, J :

This is an appeal by the petitioner, the Lithuanian Workers' Literature Society, a corporation organized in December, 1918, under the Membership Corporations Law, from an order made at the Kings Special Term September 27, 1920, which denied the motion of the petitioner to amend its certificate of incorporation as to the qualifications of membership therein. The learned justice wrote no opinion and, therefore, we are not advised of his reasons for denying the motion.

The objects of the corporation are stated quite generally in the certificate, viz.: " to publish books, periodicals, newspapers and other publications in furtherance of its purposes; * * * to assist other progressive, political, civic and economic movements and organizations financially, and to co-operate with such organizations and movements and to initiate such movements." The practical limitation of those objects is contained in the division of the certificate which defines the qualifications of membership, which division is as follows: " *Seventh.* The membership of this corporation shall be limited to individuals who are members in good standing in

Second Department, March, 1921.          [Vol. 196

the political organization of the State of New York, known as the Socialist Party or to the legitimate successors of said Socialist Party or in the event that said Socialist Party should cease to exist, then of the political party in the State of New York which is affiliated with the Socialist Party of the United States of America, or its successors, or the political party which subscribes to and is founded upon the principles of International Socialism, and if any member of this corporation should for any reason cease to be a member of such political party, then and in that event his membership in this corporation shall thereupon automatically cease and terminate." The petition asks to amend the latter division so as to read as follows, viz.: " *Seventh.* That the membership in this corporation shall be limited to individuals who are not opposed to the organization of the workers, politically and economically in organizations which subscribe to Marxian principles approved by the majority of the members of this corporation." Respecting the language of this, it is to be noted, *first,* that the limitation is expressed negatively and not affirmatively, *e. g.,* " individuals who are not opposed to " instead of individuals who " subscribe to Marxian principles," although the latter may be deemed to be its practical sense; and *secondly,* that its last clause is of doubtful import, *i. e.,* whether the meaning intended is now " approved by," etc., or which may at any time be so approved. There is nothing in the record to show that the members have in any way limited their such approval. Obviously the main purpose of the corporation is to disseminate socialistic propaganda by printed matter. As now organized, its membership is limited to members of the Socialist political party; whereas the proposed change will extend that limitation to include all who are not opposed to " Marxian principles," at least so far as those principles are now approved by a majority of its members, or at any time hereafter may be so approved. The certificate neither as at present nor as proposed to be amended gives any information as to what extent those principles are now so approved; and, of course, it is in the nature of things impossible to foresee to what extent they may hereafter be so approved. Therefore, the license sought is to be regarded as one to propagate the " Marxian principles " in their broadest possible scope.

The publication of literature is, of course, an exercise, and perhaps, the most common and effective one, of the right of free speech. That right does not embrace the right to advise or encourage attempts to overthrow by force existing government, that is by what is commonly spoken of as revolutionary methods. Indeed, the Penal Law of this State (§§ 160, 161) makes advising or teaching " By word of mouth or writing * * * the duty, necessity or propriety of overthrowing or overturning organized government by force or violence," a felony, punishable by imprisonment for not more than ten years, or by a fine of not more than $5,000, or both. It is not the province of this court in any of its departments to set itself up as a censor of the tastes, social or political, of the people. However repugnant to our minds and consciences the socialist program may be, we are not to stand in the way of organizations to promote its accomplishment, provided only it is clear that the purpose and intent of those organizations is to seek the accomplishment of that program by lawful methods, that is to say, to change our form of government by amending the Constitution through constitutional methods. It may be remarked in passing that whatever may have been or may now be the situation in any other country, there can be in this country no sort of moral excuse even for advocacy of a resort to any other means of effecting such change. By the adoption of the prohibition and universal suffrage amendments to the Federal Constitution (18th and 19th Amendts.) we have recently had very striking examples of the practical ease and celerity with which our Constitution may be radically amended.

Certainly, however, it is plain that this court should not approve the formation or the existence of any society which, in its declared objects, embraces the purpose to overthrow by force organized government in this country. Of the soundness of this proposition there can be no doubt. The vital question or test here, therefore, is this: Do the Marxian principles include that doctrine, or rather, at least in these strenuous times, is it plain that they do not? It is not the purpose of this court to take any chances in that respect. Its approval should not be extended to any organization whose objects are so broadly stated as by any reasonable possibility to

embrace the forbidden purpose.   This is now a very practical question, because it is a matter of common knowledge that of late socialists in this country have become sharply divided into two classes or cults, namely: (a) Those who advocate and seek the proposed change in our social and governmental system only by constitutional methods, that is, by teaching the claimed advantages of the proposed change and by accomplishing it through the popular vote, adopting apt constitutional amendments; and (b) those who advocate or seek to accomplish that change by force after the manner in which the recent Russian so-called revolution was effected.   It is also to be noted that in general the members of both classes claim to be true followers or disciples of Marx.   This much seems to be conceded by the following passage from appellant's brief here:   " This dissension is universal and prevails even among the ranks of the Lithuanian Socialists.   Yet all adhere to the original theories of Karl Marx.   The Marxian concepts of political economy can therefore be stated to be the one distinguishing and generalizing classification which qualifies Socialists.   The adherence to or the disbelief in can be said to be the only test."

As above stated, the vital test here is this: Do the " Marxian principles " include, or rather exclude, the doctrine that the so-called social revolution (referring now to the result, not the means) may properly be sought and accomplished by force, that is, by so-called direct action?   In my effort to solve this question I finally had recourse to a book, found in our public libraries generally, entitled " Karl Marx, His Life and Work," by John Spargo, published in 1910.   Its author is reputed to be of the lawful class of socialists, that is, to favor resort to lawful methods only for the attainment of the revolution sought.   He evidently considers himself an ardent follower of Marx, and his work is a sympathetic and appreciative review of the life and teachings of that social and economic philosopher.   Seeking therein for a brief yet comprehensive summary of the doctrines of Marx, I find it so expressed in the " Communist Manifesto," which was issued by him about the middle of the last century.   Indeed, Mr. Spargo at page 107 of his book speaks of the manifesto as " The great document, which is to modern Socialism what the Declaration of

Independence is to America." Its leading propositions may well be summarized thus:

(a) The present system of society and government is radically and intrinsically wrong, being capitalistic and constituting a practical enslavement of the working people, really as much so as any form of slavery that ever existed.

(b) The true and proper system is that of control by the workers, that is, the proletariat, with communism of property and real equality of interests in all respects, involving the abolition of all private property and in general of all social distinctions.

(c) As to the remedy or means by which that revolution (meaning now resultant change) involved in the substitution of the ideal state or system for the present ones is to be accomplished, or by which its accomplishment is to be sought, the " manifesto " deals in general expressions. Mr. Spargo appears to construe them as limiting those means to legitimate political action, for example in this country by constitutional amendments through constitutional methods. From his review, however, it clearly appears that Marx favored the several attempts to overthrow organized government by force which were made in 1848 in various European countries, and that he personally aided some of them. Moreover, at page 335 of his book, he quotes Marx as having favored the acts of the Paris Commune in 1871 by writing of it in these laudatory terms: " This insurrection is a glorious deed for our party, the best since the Revolution of June, and the grandeur appears the greater when we think of all the vices of the old society, of its wolves, its swine, and its common hounds." In view of those concrete examples of Marx' own application of his principles to actual events, it would seem that the " direct action " Socialists, so called, are well warranted in claiming to be his followers. I conclude, therefore, that the " Marxian principles " are broad enough to justify, even in this country, the propaganda, which our Penal Law makes criminal and even felonious.

The present effort of the petitioner to change its scope in effect from its present purpose, which appears to be to promote the doctrines and successes of the present Socialist political party, to the purpose of promoting the application of the

Second Department, March, 1921.          [Vol. 196

" Marxian principles " without limitation, seems significant in view of certain well-known facts of recent occurrence. At the general election in this State in the fall of 1919 five Assemblymen candidates of the Socialist party were elected, but that Assembly, after a long investigation and trial, expelled those members upon the main ground that it appeared by the platform of that party that it favored the accomplishment by force of the so-called revolution which it sought to effect; that is, that it favored the use of such means as had lately been employed in Russia according to common report. I am not insensible that there was and still is a wide difference of opinion as to the propriety of that action of the Assembly, but we, as a court of the State, are reasonably bound to give respectful consideration to its action in that regard, as being that of the constitutional authority having final jurisdiction in the matter. In the interim before the last general election the Socialist party, at least in this State, amended its platform so as to make it clear that it stands for the attainment of its ultimate object, the proposed change of social and governmental systems, by constitutional methods only. Upon its platform so amended several members of the Assembly were elected to and even accepted by the present Assembly, and are now acting as members thereof. The effect of that amending of the platform of that party would, according to the terms of the present seventh article of petitioner's certificate of incorporation, operate, *ipso facto*, to expel or withdraw from the membership of the petitioner every Socialist who holds to the doctrine of the so-called direct action, that is, the attainment of the desired revolution by forcible means. Upon the other hand, the effect of the proposed amendment will be to retain such persons in petitioner's present membership, and even to admit thereto others of the same kind. Indeed, in the premises no other adequate reason for the desired change is perceived. This court cannot approve any such scheme, or in any manner contribute to any such result.

Therefore, I advise that the order appealed from be affirmed, with ten dollars costs and disbursements.

RICH, BLACKMAR, KELLY and JAYCOX, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.