CITY OF NEWBURGH, Appellant, *v.* PARK FILLING STATION, INC., Respondent.

Second Department, December 22, 1947.

*Daniel Becker, Corporation Counsel* (*Lawrence Herbst* with him on the brief), for appellant.

*Henry Hirschberg* (*Ernest M. Levinson* with him on the brief), for respondent.

JOHNSTON, J.  This action was brought pursuant to section 31 of the Public Health Law to recover expenses incurred in the suppression and removal of a nuisance on defendant's property, deemed by plaintiff's Board of Health to have been detrimental to the public health.  At the close of the case both parties moved for a directed verdict.  The court granted defendant's motion and dismissed the complaint on the merits, and plaintiff appeals.  The facts are not in dispute.

Defendant was the owner of premises in the city of Newburgh, on which it operated a gasoline station and, in connection therewith, maintained an underground gasoline tank in which gasoline was stored for the purpose of serving its customers.  About February 15, 1945, tests made at defendant's request disclosed that the tank was leaking and a quantity of gasoline had seeped into the ground.  The tank was removed.  Subsequent tests made by the Fire Department revealed the presence of vapors of an explosive nature in adjoining premises, necessitating the evacuation of several tenants.  On February 19, 1945, the Fire Department served on defendant three notices to the effect that, in violation of plaintiff's fire prevention ordinance, hazardous vapor conditions existed on adjoining premises designated in the notices; that there was reason to believe that the conditions were dangerous to public safety and should be corrected at once, and directed defendant to attend to the conditions within twenty-four hours under the penalty prescribed by the ordinance.  On the same day the Board of Health met and, without notice to the defendant, duly adopted a resolution reciting that the Fire Department had reported that defendant's premises were in a condition dangerous to public safety by reason of the bursting of the underground gasoline tank and that this condition constituted a nuisance and was detrimental to the public health.  The resolution also provided that defendant be ordered to suppress and remove the nuisance and immediately correct the dangerous condition and, in the event

of defendant's failure to comply with the order within twenty-four hours, the board proceed to remove same in accordance with the provisions of section 31 of the Public Health Law. On February 20, 1945, defendant was served with a copy of the resolution. Defendant having failed to abate the nuisance, the board, at an expense of $703.44, did so, and thereafter plaintiff commenced this action.

The trial court held that: (1) under the Public Health Law the owner of private property on which a nuisance is alleged to have existed is not liable for the expense of abating it unless the owner has had notice of the hearing of the board at which it was determined that the nuisance exists, and (2) to permit the board to determine ex parte that a nuisance exists on private property and that the owner is liable for the expense of its removal would violate the owner's constitutional rights. It is conceded that defendant had no notice of the hearing at which the board determined that the nuisance existed. The sole question presented is whether such notice is a prerequisite to recovery by plaintiff. I believe it is not.

There is no express provision in the Public Health Law for a hearing before the board on the part of any person charged with maintaining a nuisance, and the right to such a hearing may not be implied. The reason statutes conferring powers upon a Board of Health to act summarily, to interfere with and destroy property and to impose penalties are valid, even without notice, is that the determination of the board is not final. A property owner has a remedy against the determination of the board either by action in equity for injunction or at law for damages if the condition is not, in fact, a nuisance. In other words, the board acts at its peril in making its determination and proceeding to abate the nuisance. (*People ex rel. Copcutt* v. *Board of Health,* 140 N. Y. 1.) A property owner may not be punished, nor may any penalty be recovered from him, for an alleged noncompliance with an order of the board, without a trial at which he would have the opportunity to show whatever facts would constitute a defense to the charge. The owner is not deprived of his property without due process of law, even though the order of the board is made without notice to him, because any defense which he might have had is available when an attempt is made to punish him or to enforce the provisions of the law. The owner is thus afforded a hearing after the determination of the board. "Everything that the individual could urge upon the hearing if given prior to the attempted enforcement of the act by the making of the order

in question can be said by him when he is sued, or when the attempt is made to punish him for the alleged violation of the law. * * * Where property of an individual is to be condemned and abated as a nuisance it must be that somewhere between the institution of the proceedings and the final result the owner shall be heard in the courts upon that question, or else that he shall have an opportunity when calling upon those persons who destroyed his property to account for the same, to show that the alleged nuisance was not one in fact." (*Health Department* v. *Rector, etc.,* 145 N. Y. 32, 47–48.) It is sufficient to satisfy the constitutional safeguards of the owner, if he does not have a hearing in advance of the order, that he have the right to present his defense after the order is made. The board has the power thus to act to protect the public health, without notice to the owner, even though there is no emergency requiring speedy action and though the board has ample time in which to give notice to the owner and have a hearing on the question whether the nuisance exists. (*North American Storage Co.* v. *Chicago,* 211 U. S. 306.) The fact that the statute (Public Health Law, § 21) now empowers the board to issue subpœnas, compel the attendance of witnesses, administer oaths to witnesses and compel them to testify, does not, as respondent argues, lead to a different result.

In *Fire Dept. of New York* v. *Gilmour* (149 N. Y. 453, 459) the action was to recover a $25 penalty from the occupant of premises used for the storage of combustible packing boxes, by reason of his failure to obey an order of the Fire Department requiring him, within five days from the service of the order, to build a certain wall necessary for public safety. The court held that " It was not necessary * * * that the defendant should have been notified (as he was not) of the investigation made of his premises by the appointees of the fire commissioners, or that he should have been afforded an opportunity to be heard before the order was made ", but that he was " entitled to contest in the action for the penalty the reasonableness of the order made and the facts upon which it proceeded."

In *City of Salem* v. *Eastern Railroad Company* (98 Mass. 431) the facts were identical with those in the case at bar. There, plaintiff's Board of Health directed defendant to abate a nuisance. Defendant failed to comply with the order. Plaintiff proceeded to remove the nuisance and for that purpose expended the sum for which the action was brought. One of the defenses was that the action of the board was taken without

giving defendant notice or an opportunity to be heard on any question affecting their liability. In holding that notice was not necessary in order to enforce the liability, the court stated (p. 443): "Although notice and opportunity to be heard upon matters affecting private interests ought always to be given when practicable, yet the nature and object of these proceedings are such that it is deemed to be most for the general good that such notice should not be essential to the right of the board of health to act for the public safety. Delay for the purpose of giving notice, involving the necessity either of public notice or of inquiry to ascertain who are the parties whose interests will be affected, and further delay for such hearings as the parties may think necessary for the protection of their interests, might defeat all beneficial results from an attempt to exercise the powers conferred upon boards of health." The court further held (p. 447) that "in a suit to recover expenses incurred in removing a nuisance, when prosecuted against a party on the ground that he caused the same, but who was not heard, and had no opportunity to be heard, upon the questions before the board of health, such party is not concluded by the findings or adjudications of that board, and may contest all the facts upon which his liability is sought to be established." That case was cited with approval in *Fire Dept. of New York* v. *Gilmour* (*supra*) and in *North American Storage Co.* v. *Chicago* (*supra*).

*People* v. *Board of Health* (58 Hun 595); *People* v. *Wood* (62 Hun 131), and *Schoepflin* v. *Calkins* (5 Misc. 159), relied upon by respondent, must be deemed overruled by the authorities heretofore cited.

*People ex rel. Burns* v. *Painter* (128 App. Div. 69, affd. 204 N. Y. 664) is also relied upon by respondent. In that case the Board of Health of the Town of Oyster Bay resolved that the conditions "of the ponds at Glen Cove" were a menace to the public health and were declared to be public nuisances. The health officer was authorized "to take all necessary means to suppress and abate the same." There were two ponds at Glen Cove, known as the upper and lower ponds, to which the town had title. Connecting with these two ponds were two smaller ponds, title to which was in a private corporation. Pursuant to the resolution of the Board of Health, the health officer employed the relator to do such work and furnish such materials as should be necessary in order to abate the nuisance. Relator did work amounting to $623 on the two ponds owned by the town, and work amounting to $2,875.25 on the two ponds owned by the private corporation. The Board of Health had not served

the notice on the property owner required by what was then section 26 (now § 31) of the Public Health Law that, if it failed to abate the nuisance, the Board of Health would do so and recover from it the expenses of such suppression or removal. The result was that the town could not recover from the property owner for the work done on the ponds owned by it. Relator presented his bill to the town board of audit, which allowed the claim for the $623, but disallowed the claim for the $2,875.25. It was held that the claim for the latter sum was properly disallowed because the resolution of the Board of Health directing the abatement of the nuisance existing in " the ponds at Glen Cove " referred only to the two ponds owned by the town and not to the ponds owned by the private corporation, and that the resolution of the Board of Health did not contemplate or authorize the work done on the privately owned ponds. The statements in the opinion (without citation of authority), that notice to the property owner was necessary before the Board of Health could determine that a condition on his property constituted a public nuisance, are dicta.

The judgment dismissing the complaint should be reversed on the law, with costs, and judgment should be directed for plaintiff for the relief demanded in the complaint, with costs.

HAGARTY, Acting P. J., CARSWELL and ADEL, JJ., concur.

Judgment dismissing the complaint reversed on the law, with costs, and judgment directed for plaintiff for the relief demanded in the complaint, with costs.