Brewster, J.
The judgment here under appeal nullifies as unconstitutional chapter 360 of the Laws of 1949, known as the Feinberg Law, and enjoins the defendant-appellant, The Board of Begents of the University of the State of New York, from an execution of any of its provisions. The parts of the enactment needful for examination in a test as to its validity are set forth in a companion case decided herewith. (Matter of L'Hommedieu v. Board of Regents, 276 App. Div. 494.)
The judgment and the order therefor here appealed from were at the suit of plaintiffs-respondents as officers of a voluntary association known as the Communist Party of the State of New *466 York, and the judgment obtained was the only object of their suit.
It has long been a firmly settled rule of constitutional law that one may attack the constitutionality of a statute only if, when and to the extent that his rights are affected by it; that in so attacking he is not to be regarded as his brother’s keeper, and may not be heard to champion any right but his own. (Town of Pierrepont v. Loveless, 72 N. Y. 211; Matter of Keeney, 194 N. Y. 281; Tyler v. Judges of Court of Registration, 179 U. S. 405; Standard Stock Food Co. v. Wright, 225 U. S. 540; Bandini Petroleum Co. v. Superior Court, 284 U. S. 8, 22; Bourjois, Inc., v. Chapman, 301 U. S. 183.) This rule is not to be lightly regarded for it stems from some fundamental principles in our government structures, chief among which is the doctrine of the separation of its powers. It would be usurpation of the legislative power for a court to pass upon the validity of a statute abstractly, or otherwise at the suit of one who is unaffected by it. This rule and others equally well settled, such as that which gives rise to the presumption of the constitutionality of a statute, the rule which makes for the avoidance of constitutional questions except in cases of clear necessity, and that which requires the statute to be upheld unless the demonstration of its invalidity is clear and undoubted — all such rules emanate from or are in ordered deference to the Legislature’s prerogative..
Whether these plaintiffs have any standing to sue seems doubtful. Their complaint is framed mostly as a treatise which presents their views of the unconstitutionality of the statute. There is neither clear allegation nor proof that they have been touched by its enforcement. It appears, however, to be conceded that when this suit was brought plaintiffs-respondents ’ association had been noticed for and was under inquiry by the Board of Regents for its findings as to whether it was subversive, in accordance with and under the act; and defendants have taken the position that in the interest of an expeditious determination of an issue as to the validity of the statute they do not press the point that the plaintiffs have no standing to sue. While a -further rule is that in such a case a qualification to sue may not be supplied by a stipulation of parties or counsel (Tyler v. Judges of Court of Registration, supra), still, in view of the foregoing, and the fact that plaintiffs do charge that the statute attaints their association, I feel impelled to the views herein expressed.
*467 The only way in which it has heen shown or can be seen that these plaintiffs-respondents may or can be affected by the statute they question is that their association is liable, the same as any other organization, to an inquiry by the Board of Regents for a finding as to whether, in its consensus, it is subversive to our Government for the reasons stated in the act, viz.: that it advocates, advises, teaches or embraces the doctrine that the Government of the United States or of any State or of any political subdivision thereof shall be overthrown or overturned by force, violence or any unlawful means, or that it advocates, advises, teaches or embraces the duty,, necessity or propriety of adopting any such doctrine, as set forth in section 12-a of the Civil Service Law.
To the plaintiffs’ charge that as to its association, the statute carries or has the prohibited effect of a bill of attainder, they point for support to its preamble wherein the Legislature, in stating its promptings, used the expression, “ the communist party ” as descriptive of one of the “ subversive groups ” which, reputably, or, as it stated, by “ common report ”, teaches or advocates the overthrow of our Government by force or violence, and whose members “ have infiltrated into public employment in the public schools of the state.” To effectively refute this charge there are several answers. In the first place, the references in the preamble are expressly based on hearsay. They adjudicate nothing as to the organizations referred to. In the event that the Board of Regents, for the reasons prescribed, finds and lists any organization as subversive, even then the statute provides naught else so far as that organization is concerned — no punishment is meted out, no pains and penalties inflicted, nor forfeitures prescribed. The statute is not a criminal law nor does it possess a penal nature. (Mahler v. Eby, 264 U. S. 32.) For aught of the workings of the statute the organization, even when branded as subversive, can carry on as it chooses. As to any effects upon it which may flow from other sources because of the branding, suffice it to say here that none are imposed by the statute. Plaintiffs say that their association is named in the act. Even so, it is only in the preamble which forms no part of the statute. The preamble enacts nothing. It is an expression of views. It carries no sanctions. While it may, if necessary, be looked to for aid when the statute itself is ambiguous, it cannot control the enactment (People v. Sharp, 107 N. Y. 427; Neumann v. City of New York, 137 App. Div. 55, 59; Pumpelly v. Village of Owego, 45 How. Prac. 219; *468 Goodell v. Jackson, 20 Johns. 693, 722; Jackson v. Gilchrist, 15 Johns. 89), and no such ambiguity is found. We cannot be concerned with the wisdom or propriety of the legislative choice of language in the preamble. It is no problem for us to interpret as to its reference to the “ communist party ” as based upon “ common report.” Moreover, there is nothing before us to show that in such reference the plaintiffs-respondents’ association was thereby named. Communism is a doctrine of ancient origin and wide concept, and a school of thought, party, group or organization which believes in, teaches or advocates it, may or may not advocate its advance by an overthrow of our organized governments by force and violence. (Matter of Lithuanian Workers’ Literature Society, 196 App. Div. 262.) We may take notice that to do so is not an essential of its basic doctrine. Accordingly,, since as to these plaintiffs the statute in question exercises no judicial power, renders no judgment, imposes no punishment, inflicts no pain or penalties, it may not be stricken down as a bill of attainder. (People v. Hayes, 140 N. Y. 484.)
Plaintiffs also contend that in subjecting their organization to inquiry and possible listing, the statute transgresses constitutional safeguards as to due process. This fails, because as to whatever action may be taken as to it, appropriate notice and a right to be heard is afforded, and judicial review of any determination made may he had as regards any justiciable question. (Civ. Prac. Act, art. 78; Matter of New York Edison Co. v. Maltbie, 271 N. Y. 103,111-112; City of Newburgh v. Park Filling Station, 273 App. Div. 24, affd. 298 N. Y. 649; Estep v. United States, 327 U. S. 114, 119-120.) Any inquiry here as to the manner of the inquiry directed to be made by the Board of Regents of its mode of gathering evidence or as to the 1 ‘ nature or source of the information or proof ” upon which it may act, is premature and irrelevant. (Matter of Newbrand v. City of Yonkers, 285 N. Y. 164,177.) We may not impute to the Legislature the use of vain and futile words in providing that the Board of Regents’ inquiry and the listing of a subversive organization be made after appropriate notice and hearing. Rather, we must regard this to mandate a full compliance with all the applicable requirements of due process. All equivocation about that fade away under the presumption which favors the validity of the statute when so attacked. If a reasonable construction brings it “ in harmony with the fundamental law ” the courts are bound to adopt that view. (People ex rel Simpson v. Wells, 181 N. Y. *469 252, 257; People v. Crane, 214 N. Y. 154,173; People ex rel. Cotte v. Gilbert, 226 N. Y. 103; Anniston Mfg. Co. v. Davis, 301 U. S. 337, 351-353.)
Plaintiffs’ only other cause to complain of the statute for its bearing upon them presents their claim that it unwarrantably denies or encroaches upon their association’s basic freedoms which are recorded and prescribed by our organic law, viz.: as to assembly, speech and its employment of the media of the press. The statute’s only impact there is that, after requisite due notice and hearing, their association shall, if duly established facts warrant, be listed as subversive for the reasons prescribed and the purposes manifested. That result can obtain only as an incident to the primary aim of the statute in carrying out the State’s function in its prescription and maintenance of the qualifications of its public school personnel. Insofar as the statute can operate the basic freedoms of plaintiffs’ association remain unmolested. Even as to an unwarranted use or criminal abuse of those freedoms (Penal Law, art. 14), the statute which is attacked does not fetter or punish.
When the argument that the statute runs counter to those freedoms which have constitutional guaranty, reduces to the proposition that, in the maintenance of the qualifications of its public school employee personnel, the State may not exclude those who advocate or adhere to the doctrine of criminal anarchy, it appears that no one rests upon that conclusion. All relevant criticism is as to the means provided to achieve the statutory aim. Those means are the method of the State’s exercise of its police power in a proper field — education. (Interstate Consolidated, Ry. Co. v. Massachusetts, 207 U. S. 79; Barbier v. Connolly, 113 U. S. 27.) They are employed in a matter which is not within the operative effect of the Federal guaranties as originally laid down nor as extended by the 14th Amendment. (Slaughter-House Cases, 16 Wall. [U. S.] 36; Maxwell v. Dow, 176 U. S. 581; People v. Ewer, 141 N. Y. 129.) In Noble State Bank v. Haskell (219 U. S. 104, 110, 111), Justice Holmes, in cautioning against “ pressing the broad words of the Fourteenth Amendment to a dryly logical extreme ” said, as to a State’s police power, that: “ It may he put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare and: “ Many laws which it would be vain to ask the court to overthrow could be shown, *470 easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Bights.” In Barbier v. Connolly (113 U. S. 27, 31, 32, supra) Justice Field, in stating that a primary meaning of the 14th Amendment was “ that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances”, further said: “But neither the amendment- — -broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people ”; and further that: “ Class legislation discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment. ” In People v. Ewer (141 N. Y. 129,132, supra) in treating of police power, Judge G-eat wrote: “ We may say of it that when its operation is in the direction of so regulating a use of private property, or of so restraining personal action, as manifestly to secure, or to tend to the * * * protection of the community, no constitutional guaranty is violated, and the legislative authority is not transcended. ’ ’ (Emphasis supplied.) And, in People ex rel. Nechamcus v. Warden of City Prison (144 N. Y. 529, 535) he wrote: “ If the act is a valid and reasonable exercise of the police power of the state, then it must be submitted to, as a measure designed for the protection of the public and to secure it against some danger, real or anticipated, from a state of things which modifications in our social or commercial life have brought about.” (Emphasis supplied.)
Assuming, as we have, that these plaintiffs have a standing which permits them to attack the statute; it is doubtful that they may be heard to assail it because of its impact on¡ others. (Bourjois, Inc., v. Chapman, 101 U. S. 183, supra; Utah Power & Light Co. v. Pfost, 286 U. S. 165,186.) The rule for the allowance of a full cry which has been held to obtain in some jurisdictions in the case of an indivisible statute (11 Am. Jur., Constitutional Law, § 112; 16 C. J. S., Constitutional Law, § 76, p. 165), may apply so as to give them full voice in the matter. But even so their foray is limited to the face of the statute. It may not penetrate its administrative workings. The statute may not be held invalid because of envisioned unconstitutional procedures unless it prescribes them {Minne *471 sota v. Probate Court, 309 U. S. 270, 275-277; American Power Co. v. Securities & Exchange Comm., 329 U. S. 90, 108; United States v. Petrillo, 332 U. S. 1, 11-12), and none such are to he found. In the means provided by which test is made as to the possession or continuance of the qualification for employment in the public school system, all the cardinal elements of due process are provided. The provision that membership in a listed organization is prima facie evidence of disqualification is a rule of evidence. No vested right obtained to the absence of that rule (People v. Turner, 117 N. Y. 227; Preston Co. v. Funkhouser, 261 N. Y. 140, 144), and no restrictions are laid upon the rebuttal of the presumption arising from its application. The statute is equally applicable to all public school employees and to all who may seek such employment, in a matter which is purely a State concern and which allows the exercise of its police power. It deprives no citizen of rights or privileges except “ by the law of the land.”
In the problem before us we are not concerned with difficulties which may arise in the administration of the statute. Our problem ends with the finding that it can be enforced in obedience to all applicable constitutional requirements (People ex rel. Nechamcus v. Warden of City Prison, 144 N. Y. 529, supra; Anniston Mfg. Co. v. Davis, 301 U. S. 337, 352-353, supra).
In my opinion these plaintiffs have unsuccessfully challenged the constitutionality of the statute as to its effect upon them, their association or any one else. The judgment and order appealed from should be reversed, defendant’s motion for judgment on the pleadings granted and the complaint dismissed.
Foster, P. J., Heffernan, Bergan and Coon, JJ., concur.
Judgment and order reversed, on the law; defendant’s motion for judgment on the pleadings granted and the complaint dismissed, with costs.